UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:17-cr-258 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| SHAWN RAY SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Shawn Ray Smith's Motion to Enforce Plea Offer, **Doc. ##: 122, 124**. For the following reasons, Smith's Motion is **GRANTED**.

## I. Factual and Procedural Background

Smith was charged with eight (8) drug offenses and faces a mandatory life sentence if convicted of distributing cocaine, fentanyl, and methamphetamine that resulted in a death. Doc. #: 61. The Government intends to use Smith's two videotaped confessions against him. Doc. #: 104 at 15. Smith's case was set for a March 2, 2020 jury trial. Doc. #: 51. On January 8, 2020, the Court held a pre-trial proceeding and became aware that the Government made a 15-year plea offer to Smith that would be served concurrently with his existing state sentence of approximately six years and nine months ("First Plea Offer"). Doc. #: 104. Smith declined the plea offer on January 27, 2020, and, again during the final pre-trial, on February 25, 2020. Doc. #: 105 at 6; 110 at 2-3. On February 27, 2020, the Government presented Smith a new offer calling for a 17-year sentence with no agreement on whether the federal sentence would run concurrent to his state sentence ("Second Plea Offer"). Doc. #: 85 at 1-2; 2/28/20 Tr. at 3:22-25.

On February 28, 2020, the Friday before the scheduled Monday trial, Smith's counsel filed a Motion to Withdraw and Appoint New Counsel. Doc #: 87. The Motion to Withdraw alleged

1

that "counsel provided ineffective assistance of counsel." Doc #: 85 at 2. That same day, the Court held a motion hearing and heard testimony from Darin Thompson (lead counsel) and Catherine Shusky (second counsel), Assistant Federal Public Defenders ("FPD") assigned to his case, along with Defendant Smith. Non-document Order dated 2/28/2020.

The Court learned at the Motion Hearing that Smith declined the First Plea Offer because he believed that the only way to preserve a motion to suppress was to proceed to trial. *Id*. Specifically, the witnesses revealed that Smith wanted his counsel to file a motion to suppress and that FPD Thompson declined to do so, stating that it was meritless. FPD Thompson advised Smith that if he plead guilty, he could not appeal. FPD Thompson did not inform Smith of his post-conviction remedies, i.e. a motion pursuant to 28 U.S.C. § 2255 asserting ineffective assistance of counsel for counsel's refusal to file a motion to suppress. Doc. #: 87 at 20-24; 100 at 6-7; 110 at 25; 115 at 6.

FPD Shusky testified at the Motion Hearing that, on February 27, 2020, just two days after the First Plea Offer was revoked, she met with Smith. During their discussion, FPD Shusky realized that Smith declined the First Plea Offer because he thought he would be forfeiting his motion to suppress issue. Doc #: 87 at 25. FPD Shusky explained that he could allege ineffective of counsel for failure to file a motion to suppress in a post-conviction proceeding even if he were to take the First Plea Offer. *Id*. This was the first time Smith understood the difference between appellate rights and post-conviction rights. Smith then told FPD Shusky that he wanted to take the First Plea Offer. *Id*. At the conclusion of the Motion Hearing, the Court found that what occurred was a "lack of clarity or information as opposed to misinformation," and granted the Motion to Withdraw. Doc #: 87 at 28, 35-36. The Court then postponed the trial and appointed Smith's present counsel. Non-document Minutes dated 3/2/2020.

Smith, though his present counsel, filed this Motion to enforce plea offer. Doc #: 122. After reviewing Smith's Motion, the Court scheduled a teleconference for August 31, 2020. The Court directed Smith to file a supplemental motion addressing what standard to apply no later than September 14, 2020. Non-document Order dated 8/31/2020. Smith filed his supplemental motion on September 14, 2020. Doc. #: 124. The Government filed a response on October 29, 2020. Doc. ##: 126, 129. Smith's reply was filed on December 2, 2020. *Id.*

## II.     Discussion

### A. Standard

The first question this Court must address is what standard applies. The Government asserts that *Strickland* controls Smith's Motion, and Smith asserts that the Rule 11 standard should apply. *See* Doc. #:126 at 5; *see also* Doc. #: 129 at 1. The Court agrees with Smith.

The *Strickland* test for ineffective assistance of counsel provides:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Two portions of the above rule show that it should apply only to post-conviction proceedings. First, its initial sentence explicitly limits its applicability to "[a] **convicted** defendant's claim" *See id.* (Emphasis added). Second, it concludes by explaining its rationale – that both parts must be satisfied to show that the adversary process broke down to such a degree that the result is unreliable. *See id.* The rationale is obvious: it should be very difficult to overturn a trial verdict or sentence that has been affirmed on appeal.

The Government cites no authority to support its assertion that *Strickland* applies pre-trial and only cites in its response brief authority that applies *Strickland* post-conviction. *See Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366 (1985) (applying Strickland post-conviction where a defendant decided not to accept a plea offer and proceeded to trial); *See United States v. Fortson*, 194 F.3d 730 (6th Cir. 1999) (applying *Strickland* post-conviction unrelated to the plea process); *see Weinberger v. United States*, 268 F.3d 346 (6th Cir. 2001) (applying *Strickland* post-conviction unrelated to the plea process); *see Lafler v. Cooper*, 566 U.S. 156, 132 S. Ct. 1376 (2012) (applying *Strickland* post-conviction where a defendant rejected a plea offer due to ineffective assistance of counsel and then received a fair trial); *see Missouri v. Frye*, 566 U.S. 134, 132 S. Ct. 1399 (2012) (applying *Strickland* post-conviction where a defendant alleged that his counsel's failure to inform him of a plea offer denied him of his Sixth Amendment effective assistance of counsel).

Neither counsel cited a case with facts similar to this one, and the Court has not uncovered one. Rule 11 dictates that before the Court may accept a guilty plea, the Court must conduct a searching inquiry of the defendant to ensure that the plea is knowing and voluntary. A defendant may withdraw a plea of guilty before sentencing if he can establish a fair and just reason for doing. Fed. R. Crim. Pro. 11(d)(2). It therefore only makes sense to apply the same standard to a decision to reject a plea offer. If that decision was based on a misunderstanding of the law or criminal procedure, the defendant should be able to correct his or her decision, if only a short interval of time has elapsed and there would be no significant prejudice to the government.

**B. Smith Did Not Knowingly Reject the Plea Offer**

The next question before the Court is whether Smith made his decision to reject the First Plea Offer knowingly and voluntarily. *See United States v. Torrez-Flores*, 624 F.2d 776, 1980 U.S. App. LEXIS 17309, at *780 (7th Cir. 1980). ("Rule 11 governs use, acceptance, and rejection of

pleas in United States criminal justice system, and failure to follow its procedures may result in a new trial for the defendant."). A defendant knowingly rejects a plea offer when the defendant is fully informed of his or her rights and understands the consequences of his or her rejection.

As stated above, the record shows that Smith rejected the First Plea Offer because he thought a trial would be necessary to ensure any judicial review of the suppression issue he requested his prior counsel to raise – deliberately showing his lack of knowledge about his post-conviction remedies. Smith's lack of knowledge was made quite clear by Smith, and both of his prior counsels. *See* 2/28/20 Tr. at 21:6-22:8; 23:12-24:6; 24:14-25:16; 28:19-25. During the 2/28/20 Hearing regarding this matter, Smith testified and confirmed that he does not recall having a discussion with his prior counsel about post-conviction remedies relating to his suppression issue. Specifically, when the Court inquired whether Smith was made aware of his post-conviction remedies, Smith stated:

> No. I didn't -- we didn't talk about any [post-conviction remedies] – [prior lead counsel] main focus was, like, the trial and what -- the plea offer. It wasn't about what I could do after I was convicted. It might have been raised as far as you could file an appeal after you lose trial or something. It wasn't you could file an appeal after you take a plea offer. There was none of that. *See* 2/28/20 Tr. at 23:12-24:6; *see also* 2/28/20 Tr. at 28:19-25.

Smith's testimony demonstrating ignorance of post-conviction remedies was confirmed by his prior lead counsel, FPD Thompson, in his motion to withdrawn and appoint new counsel:

> In discussing [Smith's First Plea Offer] with Mr. Smith, he inquired if he could still appeal the suppression issue if he accepted the plea offer. Counsel advised Mr. Smith that he could not appeal the suppression because no motion was filed and the plea agreement would have an appellate waiver. At that time, counsel did not discuss Mr. Smith's right to file a habeas petition raising ineffective assistance of counsel. Mr. Smith rejected the plea offer because he wanted to maintain all of his appellate rights.

*See* Doc.: #: 85 at 1; *see also* 2/28/20 Tr. at 21:6-22:8 (confirming what was stated in FPD Thompson's motion to withdrawn). Lastly, at the 2/28/20 Hearing, Smith's prior second counsel, FPD Shusky, also confirmed Smith's lack of knowledge:

5

> I met with Mr. Smith yesterday morning. He expressed -- I can't remember exactly how it was phrased, but it was something to the effect of, I need to go to trial to preserve my right to appeal the suppression, in which case a conversation began, and I said, I don't understand. There wasn't a suppression filed. So we talked about the difference between a direct appeal and a habeas, and that what his claim was really an ineffective assistance of counsel. He was not appealing a denial of a suppression. So we talked about the difference between that. I explained to him that an ineffective assistance of counsel claim for failing to file a suppression hearing would be the same -- he would be in the same position whether he pled or whether he went to trial. At that point, he had expressed some clarity on the situation. That was something that he did not understand before and expressed to me that if he had known that, he would have accepted the plea offer. Because his primary focus, and he had said this to me, his primary focus was the suppression and preserving his rights to say that we should have filed the suppression. *See* 2/28/20 Tr. at 24:14-25:16.

Given Smith's and his prior counsels' testimony, the record is clear that Smith did not make a knowing decision to reject the First Plea Offer, and his rejection was made due to a misunderstanding. *See Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) ("[t]he decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer — the attorney has a clear obligation to fully inform [his or] her client of the available options."); *see also Miller v. Straub*, 299 F.3d 570, 580 (6th Cir. 2002) (Counsel has the "paramount" duty to "ensure that the client's decision [whether or not to waive a constitutional right, such as the right to trial] is as informed as possible."). Likewise, it would not be reasonable to blame Smith for his lack of knowledge of post-conviction remedies. Most lay people cannot distinguish appellate and post-conviction rights. Indeed, the same can be said for many attorneys unfamiliar with criminal law. Accordingly, the Court finds Smith's rejection of the First Plea Offer was not made knowingly, and he did not have a full understanding of the First Plea Offer prior to his rejection.

### C. Prejudice to Smith and the Government

Because the Court finds that Smith did not knowingly reject the First Plea Offer through no fault of his own, the Court must determine whether Smith is substantially prejudiced if he loses

6

his opportunity to accept it, and whether the Government is substantially prejudiced if Smith is given another opportunity to accept it.

If Smith accepts the Government's Second Plea Offer[1], Smith's misunderstanding will cost him at least two additional years of imprisonment and potentially far more, because there is no agreement on whether the federal sentence would run concurrent to his state sentence. If Smith goes to trial, the Government will use his two videotaped confessions. If he is found guilty, he will spend the rest of his life in prison.

Conversely, the Government will not be substantially prejudiced should Smith be permitted to accept the First Plea Offer. Only three days elapsed between Smith's decision to reject the First Plea Offer on February 25, 2020, and when he changed his mind on February 28, 2020. Smith will almost certainly accept the First Plea Offer if given another opportunity to do so. *See* 2/28/20 Tr. at 24:7-25:16. Should he reject it, the Government still has all the witnesses and evidence to proceed to trial as soon as trials resume.

### III. Conclusion

Defendant's Motion, **Doc #: 122**, is **GRANTED**. There will be a 9:30 am hearing on January 26, 2021, at which Smith will be given a final opportunity to accept the First Plea Offer. Assuming this is Smith's intention, the parties shall submit a signed plea agreement prior to the hearing no later than 12 pm on January 25, 2021.

**IT IS SO ORDERED.**

>  */s/Dan Aaron Polster January 8, 2021*
> **DAN AARON POLSTER**
> **UNITED STATES DISTRICT COURT**

---

[1] Notably, Fed. R. Crim. P. 11 allows a district court to reject a plea agreement either because the proposed agreement is too lenient or because it is too harsh.